In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-1553

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BOOKER T. ROGERS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:12-cr-00107-JTM-APR-1 — **James T. Moody**, *Judge.*

ARGUED NOVEMBER 12, 2014 — DECIDED NOVEMBER 5, 2015

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Booker Rogers has a long criminal record that includes two West Virginia convictions for sexually abusing his daughter and stepdaughter. As a sex offender, he is required by the Sex Offender Registration and Notification Act ("SORNA") to register in each state in which he resides, is employed, or is a student. 42 U.S.C. §§ 16911(1), 16913. In 2011 he moved from West Virginia to Indiana and failed to register there. A few months later his

18-year-old daughter, Jane Doe, reported to police in West Lafayette, Indiana, that Rogers was sexually abusing her.

Rogers pleaded guilty to traveling in interstate commerce and failing to register as a sex offender in violation of 18 U.S.C. § 2250. The district judge applied a six-level sentencing enhancement under U.S.S.G. § 2A3.5(b)(1)(A) for committing a sex offense—incest against Jane Doe—while in failure-to-register status. The judge also refused to award credit for acceptance of responsibility under § 3E1.1 because Rogers falsely denied this relevant conduct. Rogers challenges these sentencing decisions.

The failure-to-register guideline incorporates by reference the definition of the term "sex offense" found in 42 U.S.C. § 16911(5). This case requires us to decide whether a categorical or fact-based approach applies to classifying sex offenses under this statute. We conclude that the threshold definition of "sex offense" found in § 16911(5)(A)(i) requires a categorical approach—an inquiry limited to the elements of the offense—but the exception in subsection (5)(C) calls for an examination of the specific facts of the offense conduct. The district court conducted just this sort of analysis. Because the court properly applied the § 2A3.5 enhancement and properly declined to award § 3E1.1 credit, we affirm.

## I. Background

In 2000 Rogers was convicted in West Virginia of second-degree sexual abuse of his 14-year-old stepdaughter. In 2008 he was convicted of third-degree sexual assault of his 6-year-old daughter. (Rogers has two biological daughters, Jane

Doe and the victim of the 2008 offense.) The convictions triggered sex-offender registration duties under SORNA and state law. Rogers failed to register twice while living in West Virginia; he was fined and placed on community supervision for these violations.

In November 2011 Rogers moved to Indiana and failed to register in his new state of residence. Indiana authorities were alerted to his presence in February 2012, when his oldest daughter, Jane Doe, then age 18, reported to West Lafayette police that Rogers was sexually abusing her.

Rogers was indicted for traveling in interstate commerce and failing to register as a sex offender. *See* § 2250. He pleaded guilty without a plea agreement. To calculate the guidelines sentencing range, the probation department recommended that the court apply a six-level enhancement under § 2A3.5(b)(1)(A) for committing a sex offense while in failure-to-register status; namely, the Indiana crime of incest against Jane Doe. Rogers objected and denied ever having any sexual contact with his 18-year-old daughter.

At the sentencing hearing, Jane Doe testified that Rogers is her biological father, but his parental rights were terminated when she was very young. He lived with the family for only about a year and a half, when she was between the ages of 11 and 12 years old and the family was living in West Virginia. During this time, Rogers sexually abused her. She testified that the abuse began with various forms of sexual contact (he told her it was a game called "boyfriend and girlfriend"), but escalated to oral and anal penetration, which he forced on her by threatening to whip her with a belt. Because these whippings were "very, very painful," she did not resist.

Jane Doe and her mother and siblings eventually moved away from West Virginia, first to Kansas and then to Indiana. In November 2011 Rogers moved to Indiana and briefly lived with the family again. By this time Jane Doe was 18. The sexual abuse soon resumed and included oral and vaginal intercourse. Jane Doe testified that she did not want to engage in this sexual activity with Rogers, nor did she consent to it. Although Rogers never used force and she never explicitly told her father "no," she said she felt like she had no choice because "the consequences of trying to fight back were going to be worse." She remembered the belt whippings, and she also feared that if she reported the abuse, she would not have a place to live or a relationship with her mother.

The judge found Jane Doe "very credible" and concluded that Rogers had committed the Indiana offense of incest. He also found that the incestuous relationship was "not consensual at all," or alternatively, if it was consensual, Jane Doe was under Rogers's custodial authority at the time. (We'll explain the relevance of these two findings later.) Accordingly, the judge accepted the probation department's recommendation and applied the six-level enhancement under § 2A3.5(b)(1)(A) for committing a sex offense while in failure-to-register status. The judge also denied the three-level reduction for acceptance of responsibility under § 3E1.1 because Rogers had falsely denied relevant conduct—the incestuous relationship with Jane Doe.

Rogers's total offense level was 22, which when combined with his criminal history category VI yielded a guidelines sentencing range of 84 to 105 months' incarceration. The

judge imposed a sentence at the top of the range—105 months—followed by 20 years of supervised release.

## II. Discussion

Rogers challenges the district court's application of the guidelines enhancement under § 2A3.5(b)(1)(A) for committing a sex offense while in failure-to-report status. This guideline directs the sentencing court to increase the base offense level by six levels "[i]f, while in failure to register status, the defendant committed … a sex offense against someone other than a minor." § 2A3.5(b)(1)(A). Application note 1 to § 2A3.5 states that "'[s]ex offense' has the meaning given that term in 42 U.S.C. § 16911(5)."

Under the cross-referenced statutory definition, the term "sex offense" is broadly defined as "a criminal offense that has an element involving a sexual act or sexual contact with another." § 16911(5)(A)(i). As relevant here, the definition also contains an exception:

> An offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

§ 16911(5)(C).

The judge found that Rogers committed the Indiana of-
fense of incest while in failure-to-report status. Indiana's
incest statute reads in relevant part:

> A person eighteen (18) years of age or older
> who engages in sexual intercourse or other
> sexual conduct … with another person, when
> the person knows that the other person is re-
> lated to the person biologically as a parent,
> child, grandparent, grandchild, sibling, aunt,
> uncle, niece, or nephew, commits incest, a
> Level 5 felony.

IND. CODE § 35-46-1-3(a). The judge easily concluded that
this crime falls within the broad definition of sex offense in
§ 16911(5)(A)(i): It's a "criminal offense" (a "Level 5 felony"),
and it has as an "element" a "sexual act or sexual contact
with another" (the Indiana statute requires an act of sexual
intercourse or other sexual conduct with another person).

Rogers zeroes in on the exception found in § 16911(5)(C).
As we've noted, the exception provides that "[*a*]*n offense
involving consensual conduct is not a sex offense … if the victim
was an adult*, unless the adult was under the custodial au-
thority of the offender at the time of the offense," or the
victim was at least 13 years old and the offender was not
more than four years older. § 16911(5)(C) (emphasis added).
Rogers urges us to apply a categorical approach to the
exception and limit our inquiry to the elements of the
Indiana incest statute rather than the facts of his conduct.
Because the exception excludes offenses involving consensu-
al sexual conduct between adults (unless the victim was
under the offender's custodial control or the age differential
was present), the Indiana incest offense doesn't qualify

because nonconsent is not an element. Or so his argument goes.

The "elements-centric" categorical approach is an established method of evaluating whether prior convictions count for purposes of some sentence-enhancement statutes, most notably the Armed Career Criminal Act ("ACCA"), 18 U.S.C. 924(e). *See Descamps v. United States*, 133 S. Ct. 2276, 2287 (2013) (explaining the rationale for the categorical approach in the context of the ACCA). This approach applies when the statute in question speaks in categorical or elements-based terms rather than "circumstance specific" terms. *Nijhawan v. Holder*, 557 U.S. 29, 36 (2009); *see also Taylor v. United States*, 495 U.S. 575, 588 (1990) (adopting the categorical approach to the ACCA because "Congress intended that the enhancement provision be triggered by crimes having certain specified elements").

For example, as the Supreme Court has "long recognized," the "ACCA increases the sentence of a defendant who has three 'previous convictions' for a violent felony—not a defendant who has thrice committed such a crime." *Descamps*, 133 S. Ct. at 2287 (quoting § 924(e)(1)). "That language shows … that 'Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.'" *Id.* (quoting *Taylor*, 495 U.S. at 600).

Based on the statutory language, it's clear that a categorical approach applies to the threshold definition of the term "sex offense" in § 16911(5)(A)(i); the use of the word "element" suggests as much. (Recall that under the threshold definition, a "sex offense" is "a criminal offense that has an

element involving a sexual act or sexual contact with another." § 16911(5)(A)(i).)

The exception in § 16911(5)(C) is phrased much differently. The exception uses fact-specific language, strongly suggesting that a conduct-based inquiry applies. First, the exception applies to an "offense *involving* consensual sexual conduct." § 16911(5)(C) (emphasis added). The word "involving" implies a noncategorical, fact-based inquiry. Second, and even more tellingly, the exception contains a string of fact-based qualifiers: "*if* the victim was an adult," "*unless* the adult *was under* the custodial authority of the offender *at the time* of the offense," "*if the victim was* at least 13 years old and *the offender was not* more than 4 years older than the victim." *Id.* (emphases added). This language doesn't refer to elements of the offense; it refers to specific facts of the offense. The categorical approach does not apply to the exception.

The Fifth Circuit reads § 16911(5)(C) the same way we do. *See United States v. Gonzalez-Medina*, 757 F.3d 425 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1529 (2015). *Gonzalez-Medina* raised the question whether a categorical or fact-based approach applies to the age-differential determination in § 16911(5)(C). *Id.* at 428. The Fifth Circuit began by contrasting the language of § 16911(5)(A)(i), the broad threshold definition of the term "sex offense," with the language of the exception in § 16911(5)(C). The "focus on the 'element[s]' of the predicate offense [in § 16911(5)(A)(i)] strongly suggests that a categorical approach applies" to the threshold definition. *Id.* at 430. "In contrast, the (5)(C) exception excludes from the definition of 'sex offense' an offense '*involving* consensual sexual *conduct* … if the victim was at least

13 years old and the offender was not more than 4 years older than the victim.'" *Id.* (quoting § 16911(5)(C)). The court concluded that "[t]he exception's reference to conduct, rather than elements, is consistent with a circumstance-specific analysis." *Id.* (citing *United States v. Byun*, 539 F.3d 982, 992 (9th Cir. 2008)).

In short, although the basic definition of "sex offense" in § 16911(5)(A)(i) requires a categorical, elements-based inquiry, the exception in § 16911(5)(C) is not similarly limited. Whether the exception applies depends on several fact-based inquiries: Was the victim an adult? If so, was the sexual conduct consensual? Was the victim under the custodial authority of the offender at the time? Was the specified age differential present?

Here, there's no dispute that the Indiana incest offense meets the threshold definition of sex offense in § 16911(5)(A)(i) as a categorical matter. Whether the exception applies depends on the underlying facts and circumstances—most prominently, whether Jane Doe consented to the sexual conduct. The judge found that she did not.

Rogers's fallback argument is to challenge the judge's factual finding on consent. This is a nonstarter. We review the sentencing court's factual findings for clear error, giving special deference to the court's determination of witness credibility, "which can virtually never be clear error." *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010). Jane Doe testified that she did not consent to any sexual acts with her father. Though Rogers did not use force, he had done so in the past. And even without this history, we've observed that an incest victim is "likely to comply with the sexual request by or action of her father out of fear stemming from the

belief that physical consequences will flow from noncompliance." *United States v. Martinez-Carillo*, 250 F.3d 1101, 1106 (7th Cir. 2001). Jane Doe also testified that she was afraid of jeopardizing her familial and financial situation. The judge credited her testimony and found that the incestuous relationship was "not consensual at all." That finding was not clear error.[1]

Finally, Rogers challenges the judge's refusal to award acceptance-of-responsibility credit under § 3E1.1. The judge withheld credit because Rogers falsely denied the incestuous relationship with Jane Doe. Rogers recognizes that the court's rulings on the § 2A3.5 enhancement and the § 3E1.1 reduction are linked. Because the first was sound, so was the second.

AFFIRMED.

---

[1] Rogers also contests the judge's factual finding that he had custodial authority over Jane Doe at the time of the incestuous relationship. We do not need to address this argument. The judge found that Jane Doe did not consent to the sexual acts; because that finding is not clearly erroneous, the exception in § 16911(5)(C) for consensual sexual conduct between adults does not apply.